UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVGENII IULLO,<br><br>                    Petitioner(s),<br><br>     v.<br><br>FIELD OFFICE DIRECTOR, U.S.<br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, et al.<br><br>                    Respondent(s). | CASE NO. C26-1579-KKE<br><br>ORDER DENYING HABEAS PETITION |

Petitioner Evgenii Iullio, representing himself, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Dkt. No. 1.  Petitioner is a Russian citizen subject to a final order of removal who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He challenges the legality of his ongoing confinement and the adequacy of his medical care at NWIPC.  Because Immigration and Customs Enforcement ("ICE") has detained Petitioner for less than the presumptively reasonable six-month period identified by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), Petitioner has not shown that his detention has become unlawfully prolonged.  Petitioner also fails to show that his medical care at NWIPC

ORDER DENYING HABEAS PETITION - 1

has been so deficient as to render his conditions of confinement unconstitutional.  Accordingly, the Court will deny his habeas petition.[1]

## I.   BACKGROUND

Petitioner is a native and citizen of Russia currently detained at NWIPC.  Dkt. No. 14 ¶¶ 4, 7.  In 2021, he arrived in the United States from Mexico at a port of entry and applied for asylum. *Id.* ¶ 5.  Immigration officials paroled Petitioner into the County but issued him a notice to appear for removal proceedings, charging him as inadmissible under the Immigration and Nationality Act ("INA").  *Id.* ¶ 6.  Petitioner remained in the United States out of custody until July 2025, when ICE revoked his parole and detained him.  *Id.* ¶ 7.

According to Department of Homeland Security ("DHS") records, ICE decided to apprehend Petitioner upon discovering he was enrolled in an alternative to detention program related to pending criminal charges.  Dkt. No. 15-3 at 3.  ICE officers located and detained Petitioner outside his apartment building in California.  *Id.*  Days after his arrest, Petitioner was transferred to NWIPC.  Dkt. No. 14 ¶ 7.

On January 26, 2026, Petitioner appeared with counsel for a hearing in his removal proceedings and applied for relief from removal.  Dkt. No. 14 ¶ 8.  The immigration judge ("IJ") denied relief and ordered Petitioner removed to Russia.  *Id.*  Petitioner waived his right to appeal, making his removal order final that same day.  *Id.*  He has now been detained just over five months since his removal order became final.

Petitioner alleges that he suffers from a cardiac condition and that, as a result, he has been hospitalized three times since being detained at NWIPC.  Dkt. No. 1 at 2–4.  The Government filed

---

[1] The Court will not dismiss the petition for failure to name NWIPC's warden—as the Government proposes (Dkt. No. 13 at 1 n.1)—because the Court previously added warden Bruce Scott as a respondent pursuant to Federal Rule of Civil Procedure 21.  *See* Dkt. No. 5 at 1 n.1.  This order refers to Respondent Field Office Director, U.S. Immigrations and Customs Enforcement as "the Government."

ORDER DENYING HABEAS PETITION - 2

a declaration by NWIPC's medical director, Dr. Eddie Wang, which confirms that Petitioner was sent to the emergency room on two occasions for chest pain, underwent a planned cardiac evaluation procedure on a third occasion, and was seen by a cardiologist for a follow-up appointment on yet another occasion. Dkt. No. 8 ¶¶ 8, 10–12. After both emergency room visits, Petitioner was cleared for release and his attending medical team returned a "negative cardiac work up." *Id.* ¶¶ 8, 12. Petitioner had two stents placed in April 2026, and has been prescribed several medications, which, according to Dr. Wang, Petitioner has had access to while in custody. *Id.* ¶¶ 11, 14. Dr. Wang states that NWIPC's medical team will "take appropriate medical action" if Petitioner's cardiologist makes additional recommendations for his care and that, in his opinion, "Petitioner is receiving appropriate medical care[.]" *Id.* ¶ 16.

On May 7, 2026, Petitioner, proceeding *pro se*, filed his habeas petition and concurrently filed an "emergency motion for immediate release" (Dkt. Nos. 1, 2), which the Court construed as a motion for a temporary restraining order ("TRO") (Dkt. No. 5). The Court denied the TRO motion. Dkt. No. 10. Then, the Government filed its return to the habeas petition, and Petitioner filed his traverse. Dkt. Nos. 13, 16. The habeas petition is now ripe for the Court's consideration.

## II.   DISCUSSION

### A.   Legal Standard

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

ORDER DENYING HABEAS PETITION - 3

**B.**    **Indefinite Detention**

Petitioner primarily contends that he is entitled to release because his removal to Russia is not reasonably foreseeable and his detention has thus become indefinite.  Dkt. No. 1 at 4–5.  Detention of noncitizens following an order of removal is governed by the INA.  "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody."  *Zadvydas*, 533 U.S. at 682.  During the 90-day removal period, the Government "shall detain" the noncitizen.  8 U.S.C. § 1231(a)(2)(A).  Once the 90-day removal period ends, the Government may continue to detain certain noncitizens.  *Id.* § 1231(a)(6).  "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]"  *Id.*

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Zadvydas*, 533 U.S. at 699.  "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause."  *Id.* at 690.  Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  The "presumptively reasonable" period for detention following a removal order is six months.  *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.  Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing."  *Id.*  If the Government

ORDER DENYING HABEAS PETITION - 4

fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Petitioner's detention is still within the six-month "presumptively reasonable" period recognized in *Zadvydas.* 533 U.S. at 701. Accordingly, Petitioner has not met his initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Rather, it appears that efforts to remove Petitioner are progressing. ICE has indicated that it completed a travel document request for Petitioner in early March 2026, and, as of May 2026, was coordinating with the Russian embassy to schedule an in-person interview in furtherance of Petitioner's repatriation. Dkt. No. 14 ¶¶ 10, 11. Accordingly, Petitioner is not entitled to release under *Zadvydas* at this time.[2]

## C.    Petitioner's Medical Care

Although not clearly articulated in his petition, Petitioner's traverse claims that he is entitled to release because NWIPC's level of medical care "constitutes a violation of Petitioner's constitutional rights." Dkt. No. 16 at 1–2. Although Petitioner does not cite authority for his claim, the Fifth Amendment does prohibit conditions of civil detention that "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because civil detainees, such as noncitizens awaiting removal, have not been adjudicated guilty of a punishable crime "in accordance with due process of law." *Bell*, 441 U.S. at 535–36; *see also Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (holding that "imprisonment at hard labor" of noncitizens subject to deportation "without a trial by jury" violated due process). "Whether civil detention is unconstitutionally punitive … is a question that clearly sounds in habeas because it goes directly to the legality of the detention itself." *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL

---

[2] Nothing in this order prevents Petitioner from renewing his request for relief in the event that he is not ultimately removed as intended.

ORDER DENYING HABEAS PETITION - 5

413530, at *9 (W.D. Wash. Feb. 13, 2026); *see also Doe v. Becerra*, 723 F. Supp. 3d 688, 691 n.1 (N.D. Cal. 2024) (distinguishing *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023), which involved a challenge to conditions of confinement by criminally convicted prisoners, from challenges to punitive detention by civil detainees, which may be brought in habeas).

The applicable test for punitive confinement considers whether a condition is either "intended to punish" or "excessive in relation to its non-punitive purpose." *Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (citation modified). Petitioner does not argue that the Government intends to punish him. However, his claim that the inadequacy of his care, standing alone, violates his constitutional rights could be construed as an argument that the inadequate care renders his confinement excessive in relation to the purpose of effectuating his removal. Dkt. No. 16 at 2.

On this record, however, the Court cannot conclude that Petitioner's care at NWIPC has been so deficient as to make his confinement punitive in violation of due process. Petitioner claims that he has not been provided a diet consistent with his doctor's instructions and that the "environment of NWIPC is inherently stressful" and thus "aggravates Petitioner's heart condition." Dkt. No. 16 at 1–2. However, Petitioner does not dispute ICE officer Sooseon Jeon's declaration that Petitioner has not raised any of these concerns—related to his diet or the conditions of his housing—with ICE. Dkt. No. 14 ¶ 13. Accordingly, the Court finds that the record does not support Petitioner's claim that the medical care at NWIPC violates his constitutional rights.

//

//

//

//

//

ORDER DENYING HABEAS PETITION - 6

## III.   CONCLUSION

Petitioner's habeas petition is DENIED.


Dated this 7th day of July, 2026.

Kymberly K. Evanson
United States District Judge

ORDER DENYING HABEAS PETITION - 7